The Merchants of Memphis v. The City of Memphis and F. C. Schafer, Tax Collector.

Statement of Case: Brown & Co. obtained judgment against the City of Memphis in the Circuit Court of the United States of West Tennessee for paving, etc., which court ordered a peremptory mandamus, compelling the city council to pass an ordinance levying a special tax to pay said judgment. A levy of fifty-four cents on the one hundred dollars was made in obedience thereto, which was construed also to apply, by the Federal Court, to merchants' capital, a number of whom filed a pitition in the State Circuit Court at Memphis, praying for a *certiorari* and *supersedeas* to bring up and have superseded the distress warrants against each of them, in the hands of the city tax collector for the collection of the special tax assessed against them severally, which they aver to be illegal upon two grounds; first, because the ordinance itself is illegal, the city government having no power under the charter and laws to levy the tax; second, because the amount of the tax is too large, since the assessment of their capital for the year, which was made under the act of 1873, violates the Constitution, and assesses their capital above the proper amount.

1. Jurisdiction. *Of State and Federal Courts. Is exclusive and independent.* Where a State or Federal Court has rightful jurisdiction of parties and the subject matter, it must be allowed to proceed to judgment and execution; their jurisdiction being exclusive and independent, process issuing from the one cannot be enjoined by suit in the other.

2. Arguendo. *State court can take jurisdiction. When.* Cases might arise where the State Court could take jurisdiction, that is, if the city was proceeding to collect a tax from property exempt, or to collect double the amount assessed, the taxpayer, without denying the legality of the levy, might have his remedy in a State court to avoid paying that which under the levy he was not bound to pay.

3. Mandamus. *From Federal Court. Defence against by petition, with new parties. Must be made. Where. Not necessary for petitioners to have been parties to the original suit. Taxpayers are entitled to no notice, an ordinance levying a tax being legislative in character. The decision of a court ordering a mandamus has the effect of a judgment. When.* When a mandamus from the Federal Court orders a tax to be levied to satisfy its judgment, petitioners avoiding the payment of such tax have no re-

Merchants of Memphis *v.* City of Memphis.

lief in the State courts, since the jurisdiction to correct the judgment, or protect parties from its effect, must either be in the court rendering the judgment, or one having the revisory power upon writ of error. The questions being the same, the State courts cannot take jurisdiction merely because the petitioners are new parties; it was not necessary that petitioners should have been parties to the original suit, since the act of adopting an ordinance levying a tax is not judicial, but legislative, in character, no notice to taxpayers is requisite to give it validity. The decision of the court ordering such a mandamus has the effect of a judgment, and leaves the defendant without discretion.

4. MANDAMUS. *Issues in nature of fieri facias. When.* If a mandamus issues to compel the levying and collection of a tax to satisfy a judgment of that court, it issues in the nature of an ordinary *fieri facias,* and is not an original proceeding, but simply a mode of executing the judgment of the court.

5. CONSTITUTION. *Construed. Merchants' tax.* The provision of the Constitution relied upon in this case is construed to mean simply that no merchants' tax, that is, the privilege tax upon merchants, shall be levied upon that part of their capital used in buying goods to sell to non-residents, but the property tax upon merchants shall be uniform with general property tax.

FROM SHELBY.

Appeal from the Circuit Court. C. W. HEISKELL, Judge.

S. P. WALKER and RANDOLPH, HAMMOND & JORDAN for the Merchants of Memphis.

J. B. HEISKELL, HUMES & POSTON, and WRIGHT & FOLKES for the City of Memphis.

MCFARLAND, J., delivered the opinion of the court.

This petition to Judge Heiskell was filed in the Circuit Court at Memphis by a number of persons,

merchants of the city.    It prays for a *certiorari* and *supersedeas* to bring up and have superseded distress warrants against each of them in the hands of the city tax collector for the collection of a special tax assessed against them severally, which they aver to be illegal.

It may be stated, somewhat more in detail than is shown in the petition, that T. E. Brown & Co. recovered a judgment against the city of Memphis for about $292,000, in the Circuit Court of the United States for West Tennessee.

This recovery was upon a contract for paving streets of the city, the act of the Legislature authorizing the city to make the contract provided for, charging the cost of the paving upon the adjoining lot owners, in proportion to the frontage of the lots upon the streets. This was resisted by a portion of the lot owners, and the law in this respect declared by this court to be unconstitutional.    The city having, however, guaranteed the payment to the contractor, the aforesaid judgment was obtained.

In 1873 the Legislature passed an act which it is claimed gave the city authorities the power to levy a tax to pay Brown & Co. and others the amounts due them.    Afterward, in 1875, the act of 1873 was repealed.

In March, 1875, a writ of mandamus issued from the said circuit court against the city, which was afterward made peremptory, commanding the city council to levy a tax to pay a part of Brown & Co.'s judgment.

In obedience to this mandate an ordinance was

adopted on the 10th of December, 1875, levying a special tax of fifty-four cents on the one hundred dollars' worth of property to pay $125,000 of Brown's judgment, the mandamus directing that this amount only should be levied for the year 1875, a like amount for 1876, and the remainder for the next year following. This proportionment of the levy was agreed to by Brown & Co. It was ascertained that the city tax collector was omitting to collect this special tax from the merchants on their capital, and upon application a peremptory writ was again obtained from the court, commanding the city authorities to extend this levy of fifty-four cents on the one hundred dollars' worth to the capital of the merchants, and in obedience to this process the city authorities, on the 23d day of March, 1876, passed another ordinance, reciting the former ordinance, and also the fact that the city tax collector had been advised that it did not extend to merchants. The former ordinance was, therefore, declared to apply to merchants' capital, and said special tax of fifty-four cents on the one hundred dollars of merchants' capital for the year 1875, as previously assessed and returned, was thereby levied for the purpose of paying said judgment to J. E. Brown & Co., and the tax-collector was directed to proceed to collect and pay the same over.

This tax, the petitioners charge, is illegal, and levied without authority of law, and upon this ground they pray to have the distress warrants issued for the collection of said tax superseded. The petition sets forth a review of the various statutes constituting the charter

of the city and its amendments, embracing all the acts previous to the act of 1873, above referred to, and it is maintained that under these acts the city authorities could not levy for all purposes a greater tax than one dollar and sixty cents upon the one hundred dollars' worth of property in one year; that this sum had been levied and paid for in the year 1875, and the power under these acts, therefore, exhausted before the levy of the special tax in question; that the act of 1873 had been repealed before the special tax was levied, so that the levy of the special tax in question was entirely without authority of law.

The petitioner further avers, in substance, that the assessment for the year 1875 of the capital of the various petitioners was made under the assessment act of 1873, which fixes the rule as to merchants, requiring them to report at the end of the year the highest amount in value of goods, wares, and merchandize which such merchant had had on hand at any one time during the year, and he is taxed on this amount as his capital. The city changed the time of this report to the 1st of July.

It is further averred, that in addition to this tax upon their goods they were afterwards required to add the amount of money on deposit, and choses in action due them.

It is averred that this resulted in compelling them to pay double taxes on such parts of their goods as they had purchased on a credit, and the sums thus ascertained in reality far exceeded their capital, and that the law violates the Constitution requiring equality

Merchants of Memphis *v.* City of Memphis.

of taxation; that the act also violates the last clause of the 28th section of article 2 of the Constitution, which forbids the levying of any greater tax upon that part of a merchant's capital used by him in the purchase of goods sold to non-residents than the *ad valorem* tax on property, it being averred that three-fourths of the capital of the respective petitioners was thus used.

Upon these grounds the petitioners ask that the distress warrants be perpetually superseded. The writs were temporarily granted, but upon motion and argument the petition was dismissed by the court, and the petitioners have appealed.

We have had the benefit of very elaborate and able arguments, and have endeavored to give the questions presented a careful consideration.

It will be observed that the petition puts the case upon two grounds, somewhat different in their character.

1st. That the ordinance levying this special tax is itself illegal, the city government having no power, under their charter and laws, to levy the tax.

2d. That if this be not so, the amount claimed against petitioners severally is too large, because the assessment of their capital for the year, which was made under the assessment act of 1873 (modified by the city ordinance) violates the Constitution, and assesses their capital above the proper amount.

The argument has been principally upon the first ground, and here the petitioners are met with the objection that as the ordinance of the city council levying the special tax complained of was passed in obedience to a peremptory mandamus issued by the Cir-

6—VOL. 9.

cuit Court of the United States for the satisfaction of a judgment rendered by the court, the State Court cannot interfere to supersede or stay the action of officers acting in obedience to this mandate; that to do so would necessarily result in conflict between the officers charged with execution of the process of the two courts.

It is admitted by the counsel for the petitioners that this question is one deserving very serious consideration. They earnestly maintain, however, that it is not fatal to their case. There are certain general principles applicable to the question which are well established, and, indeed, conceded, that is to say, that where a State or Federal Court has jurisdiction and control of the *res* or subject matter of the litigation, no process from the other court can be allowed to take such property out of the possession of the officers of the court first acquiring jurisdiction, or interfere with its action in regard thereto, and this without regard to whether the seizure was rightful or not, as in *Freeman* v. *Horne,* 24 Howard, where it was held that property seized by a marshal, under process from the Federal Court, as the property of one person, could not be replevied by a suit in the State Court by another claiming to be the true owner.

In *Buck* v. *Colbatt,* 3 Wall., it was held, however, that although the property could not be thus taken from the jurisdiction of the Federal Court, or its action in regard thereto interfered with, yet, if the process from the Federal Court commanded the marshal to seize the property of A generally, without specify-

ing any particular property, and the marshal wrongfully seized the property of B, that the latter might maintain trespass in the State Court against the marshal for the wrongful seizure.

Again, process from one court, either Federal or State, cannot be enjoined or otherwise controlled by suit in the other jurisdiction. Where the jurisdiction of the parties and subject matter is once rightfully obtained, the court so obtaining jurisdiction must be allowed to proceed without interference to judgment and execution. Its jurisdiction is necessarily exclusive, and independent of the other, and this, notwithstanding injunctions operate upon the parties and not upon the courts. This rule is uniform, and has been recognized in many cases. We refer, as more especially applicable, to the cases of *United States ex rel.* v. *The Council of Keokuk,* 6 Wall., where a mandamus was issued from a Federal Court commanding the City Council to levy and collect a tax to pay the relator's judgment. It was held to be no sufficient answer that the City Council had been previously enjoined at the suit of the taxpayers in the State Court from levying or collecting the tax; also *Riggs* v. *Johnson Co.,* 6 Wall.; also *Supervisors* v. *Durant,* 9 Wall.; *The Mayor* v. *Lord, Id.*

Again, it is settled that a mandamus, when so issued, to compel the levying and collecting a tax for the purpose of paying a judgment, is issued in the place of an ordinary *fieri facias,* and is simply a mode of executing the judgment of the court, and is not an original proceeding.

From these general rules it is argued for the defendants in this case that as it is conceded that the United States Circuit Court had rightful jurisdiction of the case of *T. E. Brown & Co.* v. *The City of Memphis*, that it had rightful jurisdiction to issue the mandamus to compel the city to levy and collect the tax to pay the judgment, and that as a consequence no State Court can rightfully interfere to declare void the ordinance passed by the city council in obedience to this mandate, or to prevent the city tax collector from doing what the Federal Court has commanded shall be done, that is, collect the tax.

But it is argued for the petitioners that in a case like this the Federal Court can only award the mandamus to compel the levying and collecting of a tax when it is a simple, plain, ministerial duty upon the part of the city council to do so, but when the power of the city council to levy such tax involves legislative or judicial discretion, to be determined under the general laws of the city, that the court cannot award mandamus, and so the judgment of the Federal Court in this case is void, and no defense to the city authorities who have obeyed it. The premises may be admitted, but the conclusion certainly does not follow. It being conceded that the Federal Court had jurisdiction in the case of *T. E. Brown & Co.* v. *The City of Memphis*, and that there being no other remedy, the court might award a mandamus to compel the city to levy and collect the tax, provided it appeared to the court to be a plain ministerial duty, it follows that we cannot undertake to say that its action was

Merchants of Memphis *v.* City of Memphis.

void, because in our opinion it was not a mere ministerial duty upon the part of the city to levy the tax. This was a question for the Federal Court to decide. Having jurisdiction of the subject matter and parties, it must determine the facts and law upon which its action is based, and the extent of its jurisdiction and powers.

We must take it that it was determined by the court that it was the plain ministerial duty of the city to levy and collect the tax, and we have no jurisdiction to review this judgment.    See the reasoning of Judge Dillon in the case of *Ex parte Holman,* 28 Iowa.

But again, it is argued that whatever be the effect of the mandamus proceeding as between Brown & Co. and the city authorities, that the merchants and taxpayers are not bound by this proceeding, as they were not parties thereto, and that the judgment and the ordinance levying the tax as to them is void; that when the city undertakes to enforce this tax against the taxpayers, that new rights and questions arise between them which the taxpayers have the right to litigate; that they must have their day in court; that the Federal Court might order the city authorities to levy and collect the tax; but whether under the law the city authorities had the power to levy such tax was a question between the city authorities and the taxpayers, to be litigated between them *de novo.*

The Federal Court, in awarding the peremptory mandamus, did not merely mean to say to the city, levy this tax, provided you have under your charter

the power to do so, but it necessarily decided, not only that the city had the power, but it was its plain duty to do so, otherwise no mandamus could have been awarded. This decision certainly had the effect of a judgment, and left the city no discretion. It was not necessary or proper that the taxpayers should have been parties. The act of adopting the ordinance levying the tax was not judicial but legislative in its character, and no notice to the taxpayers was necessary to give it validity as in judicial proceedings. It was a legislative act of taxation, so far as notice is concerned. It is true that when a tax is so levied without power or authority of law, the taxpayer may appeal to the courts to have it so declared, and its enforcement prevented. Of course, if this mandamus were out of the way, the jurisdiction of this court to enquire into the equality of this tax would be unquestionable, but for this court now to declare the tax illegal is necessarily an attempt to reverse the judgment of the Federal Court, and to supersede the distress warrants is necessarily to interfere with the process which the court has adopted to enforce its judgment.

It is said that the taxpayers are entitled to be heard, that they must have their day in court, that they cannot have a hearing in the Federal court because a proceeding in that court by them would be an original proceeding, and that court could not take jurisdiction of their case because the citizenship of the parties was not such as to give the court jurisdiction, and their only right to be heard is in the State Court

that the proper course was for the Federal Court to suspend the execution of its judgment until the tax-payers could institute the proper proceeding in the State Court, and that the Federal Court would then conform its judgment in accordance with the judgment of the State Court.

The case of *Dunn* v. *Clark*, 1 Peters, and *Christmas* v. *Russell*, 14 Wall., are relied upon to support this argument. These authorities hold, as do many others, that a bill in the equity side of the Federal Court, which is merely defensive to a judgment of that court, may be entertained without regard to citizenship. If it is an original bill, in which new parties and other matters are involved, the court cannot take jurisdiction unless the citizenship of the parties authorize it, but may suspend the execution of its judgment to give the parties the opportunity to litigate their new rights in the State Court.

The case of *Christmas* v. *Russell* may be taken as an illustration. Judgment had been rendered in the United States Court against a debtor in favor of certain parties upon one note, and another suit was pending upon a similar note, whereupon other parties came in by bill on the equity side, and alleged that they had the right to recover of the debtor the money due on these notes by virtue of a previous equitable assignment. The court held that this was a new and original suit, and as the citizenship did not authorize it, the court could not take jurisdiction, but left the parties to seek their rights in the State Courts; but as it was clear that both claimants were not entitled

to recover the money from the debtor, it was proper to suspend the execution of the judgment of the Federal Court until the rights of the new parties arising upon the new state of facts should be adjudged in the State courts.

It is claimed that this is a parellel case; that the taxpayers are new parties, and new questions arise between them and the city, and that the Federal Court should suspend its judgment until these new questions are decided in the State courts, the Federal Court not having jurisdiction on account of citizenship. The taxpayers are in one sense new parties, but the question they make is precisely the question which arose between Brown & Co. and the city, and which was decided. True, they were not parties, but it was the duty and interest of the city to make for them all the defense that could be made as to the want of power, and when the taxpayers presented themselves in the Federal Court, as it appears from a report of the proceedings they did, they presented themselves standing in precisely the attitude of the city, not presenting a new right, but simply denying the correctness of the judgment awarding the peremptory mandamus. They might present new facts and considerations to the court, but the question was the same. The judgment they asked the court to render in their favor was to set aside, reverse, or suspend the judgment rendered. This, we think, was a defensive and not an original proceeding, and that the jurisdiction to correct the judgment complained of, or to protect the petitioners from the effect thereof, must be either in the

Merchants of Memphis *v.* City of Memphis.

court that rendered the judgment, or in the court possessing revisory power upon writ of error.

We understand from the report of the proceedings that relief was asked by the taxpayers in the form of a bill on the equity side of the court, or upon petition, and the court denied the relief, but not for want of jurisdiction, and the entire proceedings are to be reviewed in the Supreme Courts upon writ of error prosecuted by the city, whether by the taxpayers also or not we are not certainly informed; but the question as to the correctness of the judgment awarding the mandamus will certainly arise upon the writ of error of the city, whether the taxpayers be technical parties or not, but we doubt not that they also will have a fair hearing. At any rate, we think we cannot take cognizance of the case merely upon the ground that the application is made by the taxpayers, and that they are new parties. It seems to us manifest that we cannot render the judgment prayed for without necessarily producing a conflict between the officers commanded to execute the process of the Federal Court and our officers. The Federal Court has commanded this tax to be levied and collected, and paid over. How can we supersede its process? It has been, in fact, virtually conceded in argument that we cannot rightfully render or attempt to enforce such judgment; but it is said that if this court will express an opinion as to the power of the city to levy this tax, that the Federal Court will adopt our judgment because they universally adopt the construction given by a State court to its statutes. It is a rule that the Federal

Court will adopt the construction given by a State
court to the statutes, to be found in previous adjudi-
cations of the State court, but it is unquestionably
the province of the Federal Court to determine the
construction of any statute of a State when the ques-
tion arises in any case of which they have jurisdic-
tion, and if no previous adjudication has been made
on the question by the State Court, the Federal Court
decides for itself, and it would be hardly proper for
this court to express an opinion merely as advisory to
the United States Supreme Court, in a case now pend-
ing in that court, in a case where we cannot take
jurisdiction to pronounce any judgment.

Although the construction of the statutes of this
State is peculiarly the province of our courts, yet this
must be in cases where we have rightful jurisdiction,
and it would not be respectful to assume that the
Supreme Court cannot properly or correctly decide
questions of this character without our instructions, and
that court would certainly not be bound to follow our
opinion should we thus express it in a case not prop-
erly before us.

It has been said that the Judge of the Federal
Court expressed a desire that the opinion of this court
should be had upon the question. We see nothing
of this sort in his opinion, or the proceedings had
before him, if, indeed, this could have any effect. We
hold, therefore, that we cannot take jurisdiction to
supersede the distress warrants complained of upon the
ground that the city authorities exceeded their power
in levying the tax, because the tax was levied in

obedience to a mandate of the Federal Court commanding the tax to be levied, issued in a case where the court had jurisdiction of the parties and subject matter, and having no rightful jurisdiction, we decline to express any opinion as to the legality of the tax.

It is possible, however, that cases might arise where the State courts could take jurisdiction, that is, if the city were proceeding to collect a tax from property exempt, or to collect' double the amount assessed. The taxpayer, without denying the legality of the levy, or attempting to avoid its effect, might have his remedy in a State court to avoid paying that which under the levy he was not bound to pay.

One ground taken in the petition amounts in substance to this, that the assessments of their capital for the year 1875 were too high, that they are each being required to pay upon a larger capital than they should be. This we think, in any view, is not a ground to supersede the distress warrants in this case. Petitioners do not appear to have complained of these assessments, on the contrary, they paid the general levy upon this assessment without complaint. If the assessments were wrong the statutes, we think, provide a mode for correction or redress. Besides, we think there is nothing in the question made. The provision of the Constitution relied upon means simply that no merchants' tax, that is, the privilege tax upon merchants, shall be levied upon that part of their capital used in buying goods to sell to non-residents, but the property tax upon merchants shall be uniform with the general property tax.

If the act, as is contended, really requires merchants to pay tax upon goods not paid for, and also money and chooses in action, this is no more than is required of others. In many instances persons are required to pay taxes on land on which they have not paid the purchase money, and the persons to whom they owe the purchase money are also required to pay taxes upon the debts thus due them, in reality paying twice on the same property, and other similar instances of practical inequality might be cited.

The judgment of the circuit court dismissing the petition is affirmed.